FILED
04 JUL 23 PM 2: 13
U.S. D[ISTRICT COURT]
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GAIL ANN HARDIN, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: CV 03-P-1704-S |
| | } | |
| MORRIS BART, PLC, | } | |
| | } | ENTERED |
| Defendant. | } | JUL 2 3 2004 |

## MEMORANDUM OPINION

The court has before it Defendant Morris Bart, PLC's Motion for Summary Judgment (Doc. # 32), filed November 25, 2003, and Defendant Michael T. Gallagher and Law Office of Michael T. Gallagher's Joinder in Motion for Summary Judgment (Doc. # 41), filed January 7, 2004. The motion has been fully briefed. In accordance with Exhibit A attached to the court's January 14, 2004 order (Docs. # 44, 71), the motion was deemed submitted on April 23, 2004 without additional argument by the parties. Defendants' motion for summary judgment asserts that no genuine issue of material fact exists and that Defendants are entitled to judgment as a matter of law. (Docs. # 32; 41). The court, having considered the briefs and evidentiary submissions, finds that the Defendants' motion is due to be denied.

**I.      Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for



its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

**II.     Relevant Undisputed Facts[1]**

On May 23, 2003, Plaintiff brought suit against Liza M. Cazaubon[2] and Morris Bart, PLC (hereinafter "Morris Bart") under the Alabama Legal Services Liability Act ("ALSLA") in the Circuit Court of Jefferson County, Alabama. (Plaintiff's Complaint, ¶¶ 10, 13, attached to Doc. # 1). Plaintiff's original ALSLA claim was based on negligence. (*Id.*). Defendants removed the action to this court on July 2, 2003. (Doc. # 1). On September 11, 2003, Plaintiff amended her complaint adding additional Defendants, including Michael T. Gallagher and the Gallagher Law Offices (hereinafter collectively "Gallagher"). (Amended Complaint, Doc. # 15). On November 25, 2003,

---

[1] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[2] Cazaubon was dismissed from the lawsuit on July 18, 2003.

Morris Bart filed its Motion for Summary Judgment, in which Gallagher later joined. (Docs. # 32, 41). On December 30, 2003, Plaintiff filed a Second Amended Complaint asserting fraud under the ALSLA. (Second Amended Complaint, Doc. # 40). Plaintiff alleges that Defendants' negligence and/or fraud caused her to enter into a settlement agreement that was against her best interest and caused her to receive settlement proceeds substantially less than that to which she was entitled. (Plaintiff's Complaint, ¶¶ 8, 11, 14, and 17).

In 2000, Plaintiff employed Morris Bart to pursue an action for personal injuries as a result of Fen-Phen medication prescribed to her. (Plaintiff's Complaint, ¶¶ 1, 6). Pursuant to an Attorney Referral Agreement, Morris Bart referred her case to Gallagher. (Third-Party Complaint, ¶ 6; Third-Party Answer, ¶ 6).

In December 2000, Gallagher and Bart agreed with American Home Products ("AHP") to globally settle all of their Phen-Fen cases on an aggregate basis for up to $358 Million, with the specific amounts to be determined by a Special Master. (Doc. # 84, Ex.11, Master Settlement Document (hereinafter "MSD"); Ex. 16, December 21, 2000 Order Establishing Qualified Settlement Fund). The fees paid to Gallagher and Bart increased with the number of their clients who signed general releases. (*Id.*)

In January 2001, Plaintiff received a letter from Morris Bart that provided:

> "**URGENT!!!** Dear Fen-Phen client: This disclosure statement is being sent to you as an urgent last resort in our effort to have all necessary papers signed before the final closing date. You must sign and send the disclosure statement to us by **FRIDAY, JANUARY 19, 2001**. If we do not receive the enclosed documents by **FRIDAY, JANUARY 19, 2001**, we may be forced to drop your case and you will be unable to collect on your settlement."

(Doc. # 84, Ex. 13 (emphasis in original)). On January 16, 2001, Plaintiff signed a document entitled

"Settlement Disclosure to Clients," electing to settle her case for an undetermined amount to "be based upon criteria including, among others, the severity of my injuries. . . ." (Doc. # 84, Ex. 14). According to the Settlement Disclosure, to the extent she had not already done so, Plaintiff was to deliver medical records, including any echocardiograms, to her attorneys so that the severity of her injuries could be determined. (*Id.*). Plaintiff also signed a "Confidential Release Indemnity and Assignment" in January 2001. (Doc. # 84, Ex. 15). On June 13, 2001, Plaintiff signed a document entitled "Diet Drugs II Qualified Settlement Release and Distribution Sheet" in return for a settlement check in the amount of $8,811.52. (Doc. # 84, Ex. 18).

Plaintiff alleges that Defendants never disclosed to her that her settlement was a "no injury" settlement with a value considerably lower than claimants with demonstrated proof of injury. (Doc. # 84, Ex. 1). Plaintiff claims that she learned the terms and values of the aggregate settlement in February 2004 when Defendant Gallagher disclosed to her attorneys for the first time the MSD and the matrix outlining settlement amounts disbursed to claimants. (Doc. # 83). The matrix reveals that claimants with an echocardiogram were paid more than "no injury" claimants without echocardiograms. (Doc. # 40, ¶¶ 60-63).

Plaintiff alleges that Defendants failed to submit an echocardiogram on her behalf even though she had signed medical releases authorizing Morris Bart to obtain her medical records which included an echocardiogram conducted by a cardiologist after her Phen-Fen use. (Docs. # 83, 84, Exs. 7-9, 20-23). Plaintiff believes that, because her echocardiogram demonstrated moderate aortic regurgitation, she would have been entitled to a minimum of $400,000 had the echocardiogram been submitted on her behalf by her attorneys. (Doc. # 84, Exs. 20, 22, 23). It is undisputed that the only piece of evidence submitted on Plaintiff's behalf was her pharmacy record proving use of the Fen-

4

Phen drug and that, as a result, Plaintiff was classified as a "no injury" claimant. (Docs. # 83, 84, Ex. 17).

### III.   Applicable Substantive Law and Analysis

The only issue before this court on summary judgment is whether the Plaintiff's legal malpractice claims, premised on negligence and fraud, are barred by the statute of limitations. Two statutes govern the limitations period applicable to Plaintiff's claims in this case and their interplay is the crux of the dispute on summary judgment.

Because Plaintiff's claims arise out of the attorney-client relationship, this case is governed by the Alabama Legal Services Liability Act ("ALSLA"). ALA. CODE § 6-5-570 (1988).[3] The ALSLA contains its own two year statute of limitations, ALA. CODE § 6-5-570(a), but it also incorporates the two year "discovery period" of § 6-2-3 as a separate statute of limitations for legal malpractice *fraud* claims, ALA. CODE § 6-5-574(b) (1988).[4] Under § 6-2-3, "the claim must not be

---

[3] The ALSLA encompasses "[a]ny action against a legal service provider which it is alleged that some injury or damage [has been] caused in whole or in part by . . . [a] violation of the [applicable] standard of care." ALA. CODE § 6-5-572 (1988).

[4] Section 6-5-574 provides:

**(a) All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterward**; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure; except, that an act or omission or failure giving rise to a claim which occurred before August 1, 1987, shall not in any event be barred until the expiration of one year from such date.

**(b)** Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitations for the commencement

considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." ALA. CODE § 6-2-3. "Discovery" under § 6-2-3 occurs when facts are known or available to the plaintiff which would lead to the discovery of the fraud in the exercise of reasonable diligence. *See Kelly v. A.L. Williams, Corp.*, 669 F.Supp. 1058 (N.D. Ala. 1986).

With respect to Plaintiff's fraud claims, Defendants argue that she cannot take advantage of the § 6-2-3 two year "discovery rule" if she discovered her cause of action *before* the expiration of ALSLA's two year statute of limitations in § 6-5-574(a). Defendants maintain that § 6-2-3 only serves as a "savings" statute for claims already barred by § 6-5-574(a). The court disagrees. Because the plain language of § 6-2-3 provides that a plaintiff "must have two years" within which to prosecute her action after discovery, § 6-2-3 serves as a tolling provision, allowing Plaintiff to rely on its two year limitations period *without regard* to whether her claim would be barred under § 6-5-574(a). Thus, Plaintiff's fraud claims in this case are timely, provided that "discovery" (as defined by § 6-2-3) occurred within two years of the commencement of this action.[5]

---

of actions, namely, . . . *6-2-3*. . . provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his or her eighth birthday to commence such action.

[5] Defendants' citation to *Williams v. Mertz*, 549 So.2d 87 (Ala. 1989) is inapposite. In *Williams*, the Alabama Supreme Court did state that "§ 6-2-3 does not ever apply to an action until the expiration of the time allowed by the applicable statute of limitations would appear to have created a bar to the suit." 549 So.2d at 88. In other words, "the time provided for filing an action . . . had run *prior to the filing of the lawsuit*"-- not prior to the discovery of the fraud as the Defendants argue in their brief. *Id.* There is no dispute that the applicable statute of limitations - § 6-5-574(a) - expired prior to the filing of the lawsuit in this case. Therefore, § 6-2-3 clearly comes into operation and the court must apply its plain language.

6

The parties disagree as to when Plaintiff reasonably should have discovered her fraud claims.[6] When all factual disputes and justifiable inferences are resolved in favor of Plaintiff, the court finds that Plaintiff has adduced sufficient evidence to create questions of fact for the jury regarding when Plaintiff was aware of facts that would lead a reasonable person to suspect fraud and whether or not fraud occurred in this case. *See Kilgo v. McClellan*, 659 So. 2d 72, 75 (Ala. 1995) (finding that when a plaintiff discovers or should have reasonably discovered the fraud perpetrated by his or her attorney is a question of fact for the jury). For example, Defendants contend that Plaintiff should have known about her fraud claims when she signed the Settlement Disclosure document in January 2001. However, Plaintiff has presented evidence from which a reasonable jury might conclude that Plaintiff did not, and could not, discover many of her fraud allegations until after the commencement of this lawsuit and the exchange of relevant documents among the parties during discovery.

With respect to Plaintiff's *negligence* claims under the ALSLA, there is no dispute that the statute of limitations is two years. Accordingly, any non-fraud malpractice claims that accrued on or before May 23, 2001 are barred by the statute as a matter of law. At this time, however, the evidence before the court on summary judgment is insufficient to determine which, if any, of Plaintiff's non-fraud claims accrued on or before May 23, 2001. Because Defendants have not established that judgment as a matter of law on these claims, their motion for summary judgment is due to be denied.

The court finds that summary judgment is due to be denied on these claims, perhaps in

---

[6] Plaintiff alleges numerous instances of fraud, including but not limited to suppression of the following: (1) Plaintiff's "no injury" status, (2) the terms of Plaintiff's settlement under the matrix, (3) Defendants' failure to obtain any of Plaintiff's medical records under the medical authorization they obtained, (4) the disparate payment ranges in the matrix, (5) the terms of compensation to Defendants upon settlement of claims, and (6) the identity of her co-plaintiffs.

substantial part because of what is *not* in the Rule 56 file. The court has not foreclosed the possibility that judgment as a matter of law on these claims still may be appropriate after the presentation of additional evidence in support of a dispositive motion or at trial. The court contemplates that the parties will complete any necessary discovery and, if there are additional arguments to be presented on these issues, the court will take them up at a later date.[7] The court will order this case to mediation, and, if the case is not resolved by agreement, the court will set a conference to determine the status of discovery and develop a plan for advancing this case to resolution.

## IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is due to be denied. (Doc. # 32). A separate order will be entered.

**DONE** and **ORDERED** this 23rd day of July, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[7] The court recognizes that, pursuant to the Amended Scheduling Order issued by this court on February 6, 2004, discovery was set to close on July 7, 2004. (Doc. # 63). Nonetheless, the court suspects that additional discovery may be appropriate in this case if such discovery was not conducted by the parties after the submission of summary judgment evidence but prior to the scheduled close of discovery. For example, the court notes that, although Defendants were ordered "to reexamine their respective positions regarding the existence and location of the purported Attorney Certification document and to update the court on the status of the requested document by filing with the Clerk of Court a document styled, 'Defendants' Notice Regarding Attorney Certification,' *on or before April 23, 2004*," (Doc. # 87), Defendants inexplicably waited until July 8, 2004, *one day after the scheduled close of discovery*, to file the court-ordered notice. (See Doc. # 94).